———

(April 30, 1904.)

IN RE L. P. SLY.

[76 Pac. 766.]

CORONER'S POWERS AND DUTIES—HOMICIDE—FAILURE TO HOLD IN-
QUEST—DISCHARGE OF PRISONER—MAGISTRATE—INQUISITION—IN-
FORMATION—EVIDENCE ON BEHALF OF STATE ON PRELIMINARY EX-
AMINATION.

1. Under the provisions of the constitution and laws of this state, a coroner is not a judicial officer.

2. The provisions of section 2, article 5 of the constitution provide that the judicial powers of the state shall be vested in a court for the trial of impeachments, a supreme court, district court, probate courts, courts of justices of the peace, and such other courts inferior to the supreme court as may be established by law for an incorporated city or town, and a coroner is not thereby invested with the judicial powers of a court.

3. Under the provisions of section 8377, Revised Statutes, and the facts of this case, it was the duty of the coroner to hold an inquest on the body of the deceased.

4. The failure of the coroner to hold an inquest is not a ground for the release of one charged with the murder of the deceased.

5. Under the laws of this state, and the provisions of section 7511, Revised Statutes, the coroner is not a magistrate, and has no authority to hold a preliminary examination.

6. Under the common law a finding of a coroner's jury is the equivalent of the finding of a grand jury, and under the common law a person may be prosecuted for murder or mansluaghter on the former, without the intervention of the grand jury.

7. Under the laws of this state, the inquisition of a coroner is not a sufficient basis for an information by the public prosecutor.

8. The failure of the state to produce all of its attainable evidence on a preliminary examination is not ground for the release of a defendant held to answer.

(Syllabus by the court.)

ORIGINAL application to this court for release of the petitioner from the custody of the sheriff, he having been held for his appearance to answer to the charge of murder. Application denied.

The facts are stated in the opinion.

Stewart S. Denning, for Petitioner. Authorities cited are nearly all found in the opinion of the court.

W. E. Stillinger, County Attorney, and Forney & Moore, for the State, file no brief.

SULLIVAN, C. J.—This is an original application to this court for a writ of *habeas corpus*. The following facts appear from the record: The petitioner, L. P. Sly, on the twenty-seventh day of January, 1904, shot and killed one John H. Hays; thereafter on the second day of February, 1904, a complaint was duly filed in the probate court of Latah county, charging the petitioner with the deliberate and premeditated murder of said Hays. The petitioner was arrested under and by virtue of a warrant issued by the judge of said court, and thereafter a preliminary examination was held and the defendant was held without bail to answer upon a charge of murder. The petitioner was thereupon remanded to the sheriff of said county. On the sixteenth day of March, 1904, the petitioner made application for a writ of *habeas corpus* to the Honorable E. C. Steele, judge of the second judicial district, which application, after a hearing, was denied. Thereupon the petitioner made application to this court for such writ. It is contended by counsel for petitioner that the probate court had no power

of jurisdiction to hear, try and determine, as an examining magistrate, whether the petitioner had murdered said Hays or not, or to determine whether there was probable cause to believe that the petitioner had committed murder, for the reason (1) that no coroner's jury had sat *super visum corporis,* or in any other manner or at all, on the body of said Hays, deceased, and that said judge had no jurisdiction to discharge, recognize or hold over without bond to the next term of the district court, the petitioner; (2) that there was no evidence produced before said court sitting as a committing magistrate to justify said court or magistrate to hold such petitioner for the crime of murder; (3) it is also contended that the writ should be granted upon the ground that the state failed to examine certain witnesses on its behalf that had been subpoenaed to testify on the preliminary examination.

The first contention of counsel is that as no coroner's inquest was held on the body of the deceased, the committing magistrate had no authority to proceed with the preliminary examination until such inquest was held. The question is fairly presented whether in case of a homicide a committing magistrate may hold a preliminary examination and commit the one charged with a crime before a coroner's inquest on the body of the deceased is held. And it is contended that it is an absolute and jurisdictional right of the defendant to have a coroner's inquest on the body of the deceased before the preliminary examination. To determine this question will require an examination of the constitution and laws of this state as to the duties and jurisdiction of coroners and the purpose and effect of the inquisition and of the evidence taken at the inquest.

In support of counsel's contention, he has cited Hale's Pleas of the Crown, volume 2, page 61; Clark's Criminal Procedure, page 130; Bacon's Abridgment, volume 2, page 424, title "Coroners," and other authorities.

In England, prior and subsequent to the time of Blackstone, the office of coroner was one of great dignity, and the office was held by persons of high authority. The office is of equal antiquity with that of sheriff. (1 Blackstone's Commentaries, *347.) At that time the powers and duties of the coroner

were both ministerial and judicial. Coroner's courts in England are courts of record. In the United States they are sometimes denominated courts of inferior jurisdiction and not of record. (7 Am. & Eng. Ency. of Law, 2d ed., 604.) But in this state the constitution and statute law do not dignify that office as a court. Section 6 of article 18 of the constitution provides for the election of a coroner as a county office, and section 11 of the same article provides that the coroner shall perform such duties as shall be prescribed by law.

Section 2 of article 5 of the constitution provides that the judicial powers of the state shall be vested in a court for the trial of impeachments—a supreme court, district courts, probate courts, courts of justices of the peace and such other courts inferior to the supreme court as may be established by law for an incorporated city or town. No part of the judicial authority of this state is vested in the coroner, and under our constitution and law a coroner's duty in holding an inquest is ministerial.

Chapter 2, title 12 of the Revised Statutes, containing sections 8377 to 8386, inclusive, is entitled "Of Coroner's Inquests and Duties of Coroners," and contains the law of this state on the subject. Section 8377 is as follows:

"Sec. 8377. When a coroner is informed that a person has been killed, or has committed suicide, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, he must go to the place where the body is, cause it to be exhumed, if it has been interred, and summon not less than nine nor more than fifteen persons, qualified by law to serve as jurors to appear before him forthwith, at the place where the body of deceased is, to inquire into the cause of the death."

Section 8378 provides that when six or more of the jurors summoned appear, they must be sworn by the coroner to inquire who the person was, when and where and by what means he came to his death, and into the circumstances attending his death and render a true verdict thereon.

Section 8379, *inter alia*, authorizes the coroner to issue subpoenas for witnesses.

Section 8381 provides that the jury, after inspecting the body and hearing the testimony, must render their verdict and certify the same by inquisition in writing, signed by them, setting forth who the person killed is, when and where and by what means he came to his death, and if by criminal means, who is guilty thereof.

Section 8382 requires the testimony of the witnesses examined to be reduced to writing and filed by the coroner with the inquisition in the office of the clerk of the district court.

Section 8383 provides that if the person charged with the commission of the offense is arrested before the inquisition can be filed, the coroner must deliver the same with the testimony taken to the magistrate to whom such person may be brought, who must return the same with the depositions and statements taken before him to the office of the clerk of the district court.

Section 8384 provides that if such jury find the person so killed by another under circumstances not excusable or justifiable, or that his death was occasioned by the act of another by criminal means, and the party committing the act is ascertained by inquisition, and is not in custody, the coroner must issue a warrant, signed by himself, with his name of office, for the arrest of the person charged.

Section 8385 provides the form of such warrant, and section 8386 directs how such warrants must be served.

Those are the only provisions contained in our statutes prescribing the duties of the coroner in the matter of holding inquests. Said section 8377 defines in what cases an inquest must be held in the following language: "When a coroner is informed that a person has been killed, or has committed suicide, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, etc.," he must hold an inquest.

Under the above provisions it is clearly the duty of the coroner to hold an inquest when he is informed that a person has been killed under such circumstances as to afford a reasonable ground to suspect that the death of the deceased has been occasioned by the act of another by criminal means. And in the

case at bar if the coroner believed that Hays met his death under such circumstances as to create a belief that it was occasioned by the criminal acts of another, an inquest should have been held. But our statutes nowhere contemplate that one charged with murder or manslaughter cannot be held on a preliminary examination until after a coroner's inquest has been held. The failure of- the coroner to hold an inquest is no ground for the release of one charged with murder of the deceased. As to whether, under the provisions of said section 8377, it is the duty of the coroner to hold an inquest on the body of every person killed within his jurisdiction, whether he has reason to suspect that the killing was by criminal means or not, we express no opinion, as that question is not before us in this case.

It is contended that a coroner is a magistrate and that the finding and return of a coroner's inquest is sufficient for the prosecuting attorney to base an information on. We cannot agree with this contention. Section 7511, Revised Statutes, defines who are magistrates as follows: "1. The justices of the supreme court; 2. The probate judges; 3. Justices of the peace; 4. Police magistrates in towns and cities." Coroners are not designated as magistrates and are not magistrates under our law. They are not authorized to hold preliminary examinations.

A coroner's inquisition is the record of the finding of the jury sworn by the coroner to- inquire *super visum corporis* concerning the death of a person, and on that at common law a person may be prosecuted for murder or- manslaughter without the intervention of a grand jury, as the finding of the coroner's jury at common law is equivalent to the finding of a grand jury. (Clark's Criminal Procedure, p. 130.) But not so under our law. The inquisition of the coroner is not a sufficient basis for information by the public prosecutor.

Certain witnesses were subpoenaed by the state and only a part of them examined or placed on the witness-stand on the preliminary examination. And it is contended that as the state failed to produce all attainable evidence of the homicide, the petitioner should be discharged for that reason, and cites *Hurd*

*v. People,* 25 Mich. 405, and Horrigan and Thompson on Self-defense, 840, in support of that contention. Neither of those authorities sustains counsel's contention. In a preliminary examination it is only necessary for the state to introduce sufficient evidence to satisfy the magistrate that a public offense has been committed and that the defendant is guilty thereof to justify the magistrate in holding the defendant to answer.

The application for the discharge of the prisoner is denied, and he is remanded to the care, keeping and custody of the sheriff in Latah county to be dealt with as provided by law.

Stockslager and Ailshie, JJ., concur.