No. 2576

## STATE *v.* HOLT

November 1, 1923.                    219 Pac. 557.

1. CRIMINAL LAW—ACCUSED HELD TO HAVE WAIVED RIGHT TO FORMAL WRITTEN COMPLAINT OTHER THAN VERDICT OF CORONER'S JURY IF IT WAS REQUIRED.

   If the verdict of the coroner's jury is not a complaint charging a crime within Rev. Laws, 7551, and that statute does not contemplate the holding of a preliminary hearing based thereon, defendant waived his right to demand a formal written complaint, if one was required, by his failure to urge it before the justice at the preliminary hearing, and his express waiver of the reading of the verdict of such jury when informed it was the complaint upon which the preliminary hearing was being held.

2. CRIMINAL LAW—PRELIMINARY HEARING IS STATUTORY PROCEEDING WITHIN RULE THAT STATUTORY REQUIREMENTS MAY BE WAIVED.

   A preliminary hearing before a justice of the peace is a statutory proceeding within the rule that statutory requirements may be waived.

3. CRIMINAL LAW—BETTER PRACTICE IS TO FILE FORMAL WRITTEN COMPLAINT AS BASIS OF EVERY PRELIMINARY HEARING OF ONE CHARGED WITH CRIME.

   Whether or not the filing of a formal written complaint charging one with crime is necessary under Rev. Laws, 7551, as a basis for holding a preliminary hearing before a justice of the peace, the safer practice is to file one as the basis of every preliminary hearing, whether the result of a coroner's inquest or not.

4. CRIMINAL LAW—WHEN PHOTOGRAPH MAY BE INTRODUCED IN EVIDENCE STATED.

   If a photograph can throw light upon the matter inquired into, or enlighten the jury more clearly than oral testimony could, it is proper to admit it.

5. CRIMINAL LAW—ADMISSION OF PHOTOGRAPH OF DECEASED TO OVERCOME THEORY OF DEFENSE OF SUICIDE HELD NOT ERROR.

   Where in a murder prosecution accused interposed defense of suicide by a pistol shot, admission of photograph by state to show pistol was placed in deceased's hand *held* not error where the photograph showed more clearly than oral testimony could every detail of the position of deceased's body, and the bloody condition of the body previously detailed to the jury.

6. CRIMINAL LAW—ADMISSION OF PHOTOGRAPH, OVER OBJECTION THAT IT DID NOT PORTRAY ORIGINAL POSITION OF DECEASED, HELD NOT ERROR.

In a murder prosecution, objection by accused to introduction of photograph of deceased lying against a door because one of the witnesses testified she opened that door *held* not error where, although witness at the trial testified she opened the door seven inches, her testimony at the preliminary hearing to the effect that she just shoved the door the least bit was more reliable.

7. CRIMINAL LAW—REBUTTAL TESTIMONY HELD PROPERLY ADMITTED WHERE ITS RELEVANCY COULD NOT HAVE BEEN FORESEEN ON EXAMINATION IN CHIEF.

Where, in a prosecution for murder of wife, accused's theory of defense that his wife killed herself, and that his relations with her were always amicable, was not and could not have been known to the state when it presented its case in chief, admission in rebuttal of testimony of state witness, deceased's sister, that eight years before, while she was visiting accused's family, she saw accused strike deceased, *held* not error; such incident, though somewhat remote, tending to rebut accused's testimony.

8. CRIMINAL LAW—ADMISSION IN REBUTTAL OF TESTIMONY COMPETENT IN CHIEF HELD NOT ERROR.

Where accused, charged with the murder of his wife while she was inside the house, interposed defense of suicide, and testified that after the shooting he returned to the house with witness following him, and that he (accused) entered and left the door unlocked, admission of witness's testimony in rebuttal that he found the door locked, and knocked some time before accused admitted him, *held* not error, though it was competent as evidence in chief, where to have permitted its admission in chief because of its competency and because it was not alluded to by any other state witness might have been an abuse of discretion.

9. HOMICIDE—EVIDENCE HELD TO SUPPORT CONVICTION.

In a prosecution of accused for the murder of his wife, in which the theory of defense was suicide, evidence *held* to support conviction.

APPEAL from Sixth Judicial District Court, Humboldt County; *James A. Callahan,* Judge.

E. L. Holt was convicted of murder, and he appeals from the judgment, and from an order denying a new trial. **Affirmed.**

*Campbell & Robins,* for Appellant:

Our criminal procedure demands filing of complaint. Constitution of Nevada, sec. 18, art. 1; sec. 8, art. 1; Rev. Laws, 6933, 6940; 3 Rev. Laws, p. 3399. The

court has no jurisdiction unless complaint is filed. Ross v. State, 106 S. W. 340; People v. Lynch, 29 Mich. 274. The complaint is foundation of jurisdiction of magistrate. 16 C. J. 495, 498. No one should be subjected to examination on criminal charge without formal complaint. People v. Howland, 44 Pac. 342; State v. Pay, 146 Pac. 304.

Accused has right to preliminary examination, though he may waive it. State v. Wells, 39 Nev. 435; People v. Christian, 35 Pac. 1043.

There can be no conviction where circumstances are as consistent with innocence as with guilt. State v. Cerfoglio, 46 Nev. 350.

Verdict of coroner's jury is merely advisory to officers, but further than this it is without effect. Small v. State of Georgia, 40 L. R. A. 369. The return of coroner's inquest is not sufficient to base information upon. Coroners are not designated as magistrates. In Re Sly, 76 Pac. 766.

The photographs' only purpose was to inflame jury, and they should not have been admitted. McKay v. State, Ann. Cas. 1913B, 1038.

The testimony of Browning as to door being locked, if material at all, was not proper rebuttal, but should have been introduced in chief. Jones on Evidence, sec. 809; People v. Harris, 102 N. E. 546.

The state withheld evidence tending to show that Holt shot himself, that he covered up his crime, and that he hated his wife, until he had put in his case. Evidence properly in chief should not be introduced in rebuttal, but only upon showing that it came to state's knowledge after conclusion of its testimony in chief. Flowers v. State, 37 South. 814.

*Diskin, Powell,* and *Goodman,* for Respondent:

The question of admissibility of photographs of the character complained of has been disposed of by this court. State v. Roberts, 28 Nev. 350.

The preliminary examination was held upon sworn inquisition and warrant of arrest issued by justice of

the peace, who is a magistrate, and acts as coroner. At common law, the verdict of coroner's jury was equivalent to indictment. 9 Cyc. 993; Rev. Laws, 7551, 7552.

Rev. Laws, 6927, defines complaint. It does not appear from our law that it must be in writing. Ex Parte Buncel, 25 Nev. 426.

Preliminary hearings need not be attended with technical formalities. State v. Davis, 14 Nev. 407.

The form of procedure in cases of this kind has been upheld in other states. State v. Brecount, 107 Pac. 763.

Testimony which tends to weaken the evidence for defense is not objectionable in rebuttal, and there is no legal prejudice to the defendant, if he is allowed the opportunity to cross-examine and to meet the evidence. 16 C. J. 867.

The purpose of complaint charging felony is to lay foundation for issuance of warrant. Rev. Laws, 6930. The warrant in this case is based upon inquisition. Rev. Laws, 7551. The statute does not require complaint be read, but that magistrate inform defendant of charge against him. Rev. Laws, 6970, 6978.

In Re Sly, 76 Pac. 766, is to effect that inquisition of coroner's jury is not sufficient basis for information. It is basis only for warrant and arrest, upon which magistrate acquires jurisdiction. By waiving all possible objections defendant submitted himself to jurisdiction of magistrate and trial court. State v. Miller, 124 Pac. 361.

The only purpose of preliminary examination in which defendant is interested is to inform him of charge, and, if complaint, warrant and evidence do that, he may not complain. If examination warrants holding defendant, imperfections in complaint are cured, and the examination is legal. People v. Shenk, 142 N. Y. Supp. 1081; Zumwalt v. State, 141 Pac. 710.

Objection to any preliminary papers or proceedings must be made at preliminary examination. Such objections will not be considered by the trial court or on appeal. State v. Bailey, 3 Pac. 769; State v. Tennison, 18 Pac. 948.

By the Court, COLEMAN, J.:

The defendant was convicted in the district court of the crime of first-degree murder, and from an order denying a motion for a new trial and the judgment he appealed. Preliminary to considering the merits of the case, we will dispose of the objection going to the jurisdiction of the court to try the case and render a judgment against the defendant.

1. After the death of the deceased a coroner's jury was impaneled to inquire into the cause of her death. It returned the following verdict:

"The deceased was named Mrs. E. L. Holt; was a native of Pennsylvania, aged about 38 years; that she came to her death on the 2d day of December, 1921, in this county, by gunshot wounds inflicted by other than herself under circumstances not excusable or justifiable in law, and we believe such other person to have been E. L. Holt, and we recommend that he be held to answer the same."

Upon the return of this verdict the coroner, pursuant to Rev. Laws, 7551, issued a warrant for the arrest of the defendant. The section just mentioned reads as follows:

"If the jury find that the person was killed by another under circumstances not excusable or justifiable in law, and the party committing the act be not in custody, the justice of the peace, acting as coroner, shall issue a warrant signed by him, with his name of office, for the arrest of the accused."

The defendant was arrested upon the warrant mentioned and taken before the magistrate. Counsel appeared in behalf of the defendant, asked for time in the matter, and stipulated as to the date of holding the preliminary examination.

The preliminary examination was based upon the verdict of the coroner's jury. When the defendant was brought before the magistrate for the preliminary hearing he was informed that the proceedings were based upon the verdict of the coroner's jury, and that it was considered as a complaint. The magistrate commenced

to read it to the defendant, when his counsel, without making any objection thereto, announced that they waived the reading thereof. At the conclusion of the examination the magistrate held the defendant to answer. Thereafter the district attorney filed an information against the defendant charging him with murder. In due time counsel for the defendant moved to set aside the information upon several grounds, all of which are bottomed upon the contention that no complaint was, prior to the preliminary hearing, filed with the magistrate charging the defendant with a crime. Hence it is said that the magistrate acquired no jurisdiction to proceed, and therefore the district court acquired none, and that prejudicial error was committed by the trial court in refusing to set aside the information.

On the part of the state it is contended that the verdict of the coroner's jury constituted a complaint, and that our statutes contemplate the holding of a preliminary hearing based thereupon. To support this contention our attention is directed to certain sections of the statute and to the following authorities: In Re Sly, 9 Idaho, 779, 76 Pac. 766; State v. Tennison, 39 Kan. 726, 18 Pac. 948; Turner v. People, 33 Mich. 363. We do not deem it necessary to decide the foregoing contention, since, as further maintained by the state, the defendant waived the right to raise the point relied upon in the district court by his failure to urge it before the justice of the peace, and by expressly waiving the reading of the verdict of the coroner's jury when informed that it was the complaint upon which the preliminary hearing was being held.

2, 3. A preliminary hearing is not a trial. In the very nature of the situation it could not be. A justice of the peace has no jurisdiction to try one charged with a felony; he can only hold a preliminary hearing and determine if probable cause exists for holding defendant to answer. The holding of a preliminary hearing is a statutory proceeding, and it is a rule well recognized by the courts of the land that one charged with

a crime may waive a statutory requirement. This is such a well-recognized rule that we hardly deem it necessary to cite authority to support it; however, the following are a few among the many so holding, namely: McComb v. District Court, 36 Nev. 417, 136 Pac. 563; State v. McLain, 13 N. D. 368, 102 N. W. 407; People v. Dowd, 44 Mich. 488, 7 N. W. 71; Toney v. State, 15 Ala. App. 14, 72 South. 508; State v. Anderson, 35 Utah, 496, 101 Pac. 385; State v. Miller, 87 Kan. 454, 124 Pac. 361; State v. White, 76 Kan. 654, 92 Pac. 829, 14 L. R. A. (N. S.) 556; Ex Parte Talley, 4 Okl. Cr. 398, 112 Pac. 36, 31 L. R. A. (N. S.) 805; Osborn v. State, 143 Wis. 249, 126 N. W. 737, 31 L. R. A. (N. S.) 966; 8 R. C. L. 69; 16 C. J. 184. It is a wholesome rule, without which criminals would often be afforded an avenue of escape, because, in delay, important witnesses often die or leave the country. In fact, to take any other view would put a premium upon such a course as was adopted by the defendant in this case. He had nothing to lose and everything to gain.

It is the public policy incorporated into the written law of this state to ignore all irregularities and informalities in criminal procedure which result in no injury. Every consideration impels us to hold that the defendant waived the filing of a formal written complaint, even if one be required, as to which we express no opinion, though we are frank to say it is the safer practice to file one as the basis of every preliminary hearing, whether the result of a coroner's inquest or not.

While the point is not made, and we do not undertake to decide it, the query arises whether the defendant was not limited, in making a motion to set aside the information, to the grounds enumerated in section 7090 of the Revised Laws, as amended by section 30, c. 232, Stats. 1919. In this connection the case of State v. Bailey, 32 Kan. 83, 3 Pac. 769, is interesting. The proceedings in that case before the information was filed were identical with those in this case, except that the defendant did move the justice of the peace to quash the warrant and discharge him from custody. The

supreme court, in passing upon an alleged error of the trial court in overruling a plea in abatement, said:

"When the question is raised by a plea in abatement, as in the present case, we think the only questions presented for consideration are whether an attempt has been made to give the defendant a preliminary examination, and whether by such attempt reasonable notice has been given to him with regard to the nature and character of the offense charged against him. If no attempt has been made to give the defendant a preliminary examination, and if he has not waived the same, and was not at the time of the filing of the information a fugitive from justice, we think the plea in abatement should be sustained; and also where the preliminary examination has not been waived and the defendant has not been a fugitive from justice, and has not had, through the instrumentality of a preliminary examination, any reasonable notice of the nature and character of the offense charged against him, we think the plea in abatement should also be sustained. But it is not necessary that the papers and proceedings on a preliminary examination should be technically regular and exact, like the papers and proceedings on the final trial. It is not necessary that the papers and proceedings on a preliminary examination should set forth the offense in all its details and with perfect and exhaustive accuracy. For the purpose of authorizing a final trial, and of requiring that the defendant should plead to the merits of the action, all that is necessary is that the defendant should be given a fair opportunity to know, by a proffered preliminary examination, the general character and outlines of the offense charged against him; and it is not necessary that all the details and technical averments required in an information should be set forth in the papers used on the preliminary examination. And the defendant should take notice from the evidence introduced by the state on the preliminary examination, as well as from the papers in the case, of the nature and character of the offense charged

against him. In the present case the defendant had an opportunity to know, and did know, from the preliminary examination, all that was necessary for him to know."

4, 5. We come now to the assertion that the court committed prejudicial error in admitting in evidence a photograph of the deceased in the position in which she was found shortly after the homicide. It is said that the only purpose which the introduction of this evidence could serve was to inflame the minds of the jury. If such were the fact, we freely admit that its admission in evidence was not only error but prejudicial. It is the theory of the defense that the deceased shot herself. The photograph shows her lying on the floor close to the wall, with a door at her back, and the portion of her body above her waist to the right of the door, with her face turned from the wall and toward the middle of the room, the left forearm drawn up, and her right forearm over her forehead with the palm open, palm up, and the butt of an automatic pistol touching the fingers, the barrel pointing at an angle of about forty-five degrees from the body, the muzzle being close to the left hand. The ball or base of the thumb of the right hand is bloody, and across it are corrugations comparing to those on the slide of the pistol. It is argued by the state, in view of the contention by the defendant that the deceased killed herself, that those facts are material, and that their portrayal by the photograph is proper.

This court, in State v. Roberts, 28 Nev. 350, 82 Pac. 100, wherein the contention here made was argued, said:

"We are cited to some extreme cases where photographs were rejected on the grounds that witnesses had described what they would show, or that they would inflame and prejudice the jury—doctrines that we are not able to sanction, and which are not supported by the weight of authority. If juries cannot be intrusted with the pertinent facts for which litigants and offenders are responsible, however appalling they may be,

and with the most accurate, instructive, and convincing evidence of those facts, it is time to abolish the jury system. Photography, engraving, and the art of picture making are important factors in our civilization, and the courts in their search for truth should not be averse to accepting the benefits they bring. A glimpse at a photograph may give a more definite and correct idea of a building or of·a person's features than the most minute and detailed testimony. A child may learn more regarding the appearance of an animal it never saw by the sight of its picture than by listening to a lecture or reading a volume of description. When photographs are shown to be correct representations, and give a better and clearer understanding of relevant facts, it would seem on reason and principle that their use as evidence should be favored."

In this age of general education, wherein people are trained to think, we believe there is little danger of the minds of a jury being influenced merely because a bloody garment, a photograph showing a bloody garment, or any other bloody object is introduced in evidence and exhibited to them. But, however this may be, if such evidence can serve to throw light upon the matter inquired into, or can present a situation for the enlightenment of the jury more clearly and satisfactorily than can be presented by oral testimony, we think it is no abuse of discretion for the court to permit its introduction. The state contends that the corrugations across the ball of the thumb are circumstances indicating that the pistol was placed in the hand after the blood had slightly dried. In the instant case the photograph shows every detail as to the position of the body with reference to the wall of the room, the door, the position of the hands, the corrugations, and the pistol much more clearly and satisfactorily than could have been explained by oral testimony. Furthermore, the bloody condition of the body was detailed to the jury prior to the introduction of the photograph. In the circumstances we think the court did not err.

6. But it is said that the body was moved by the opening of the door by Mrs. Downing, and hence the

photograph does not accurately portray its original position. Mrs. Downing testified at the trial that she opened the door about seven inches, but at the preliminary hearing her testimony was to the effect that she "just shoved the door the least bit." From the relative position of the body and the door, as shown by the photograph, we are convinced that the trial court must have concluded that her testimony at the preliminary was the more reliable. No error was committed in the particulars mentioned.

7. It is insisted that the court erred in admitting in evidence the testimony of the witnesses Russell and Browning, in that their testimony is not properly in rebuttal, and should have been given in the main case, and, furthermore, that the incident testified to by the witness Russell is an incident too remote. The defendant testified in his own behalf, and among other things testified that he had never had serious difficulty with his wife, and had never struck her. Miss Russell testified that she was a sister of the deceased, and that, while she was visiting the defendant's family about eight years prior thereto, she had seen defendant strike her. When the state was presenting its case in chief the theory of the defense had not been outlined, and it was impossible for the state to know what his defense would be. It did not develop until he went upon the stand and gave his testimony, wherein he swore that the deceased and he had lived on amicable terms, and that he had never struck her, and that she shot herself. Under the circumstances, we are satisfied that the testimony was admissible. Though the incident testified to was somewhat remote, it did tend to rebut the testimony given by the defendant, and the jury had the right to consider it for what it was worth.

8. The testimony of the witness Browning flatly contradicted that of the defendant upon one point, and tends to contradict him upon another. The defendant testified that after the shooting he returned to the house, and that Browning followed him, and that he entered and left the door unlocked. Browning, in rebuttal, testified that he found the door locked, and that he

knocked and stood at the door some time before the defendant admitted him. It is contended that this testimony should have been presented by the state in making out its case in chief, and that it is not properly rebuttal evidence. It certainly would have been competent evidence in chief in establishing a circumstance proper for the consideration of the jury in arriving at a determination of the guilt of the defendant, and had he not given the testimony which he did, it might have been an abuse of discretion on the part of the court to permit the introduction of such evidence on the part of the state to establish a case, but, where the defendant took the stand and testified to certain facts which were not alluded to by any of the state's witnesses, it would be going too far to say that his testimony could not be contradicted merely because such contradictory evidence tends to prove a circumstance which might have been competent as evidence in chief.

9. Finally, it is contended that the verdict is contrary to the evidence. It is said that the deceased at the time of the tragedy was momentarily insane, and that she shot the defendant and herself. It is clearly shown that the deceased was subject to fits of great despondency, and that shortly before the tragedy she said she was going to Lovelock and kill her husband, their boy, and herself. On the other hand, there is a letter in the record written by her to a friend in San Francisco the day before the homicide in which she said she would return to that city. This indicates that if she ever had such an intention she had abandoned it. The jury heard all the evidence, and, under instructions not complained of, returned a verdict of guilty. From the evidence, as interpreted by counsel for the appellant upon the oral argument, we do not see how the jury could have done differently. In presenting the theory of the defense he said the defendant got the gun about an hour or a little over from a friend; that he took it home in his overcoat pocket, and when he got there placed his overcoat upon the bed, and that his wife, while looking through his pockets for letters, found the

gun, and in a moment of insanity shot him, from which he fell, then shot herself; that as he arose she was reeling about the room with the pistol dangling from the fingers; that he rushed to her to prevent her shooting herself again, and in a struggle she was accidentally shot through the neck from the back, the bullet entering about an inch to the right of the median line. The gun having been borrowed by the defendant, he had to account for the use of it. The defendant was confronted with the necessity of explaining the wound which the deceased received by the entry of the bullet in the back of the neck. He no doubt did so to the best of his ability, but the explanation was so unreasonable that it bordered on the ridiculous. In the first place, how a story of a woman so weak as to have relaxed her grasp upon the pistol as to let it dangle, reeling about the room as contended, could impress any one with the necessity of preventing her inflicting further injuries upon herself is beyond human credibility. Besides, how in her admitted weakened condition there could have been such a struggle, as claimed, is beyond comprehension. In any event, the jury heard the evidence, and, it being competent and sufficient to justify the verdict, we are bound by it.

No prejudicial error appearing, there is no alternative but to affirm the judgment.

It is so ordered.